679 F.2d 679
 10 O.S.H. Cas.(BNA) 1649, 1982 O.S.H.D. (CCH)
P 26,068
 FIRE EQUIPMENT MANUFACTURERS' ASSOCIATION, INC., et al., Petitioners,
v.
F. Ray MARSHALL, Secretary of Labor, United States
Department of Labor, and Dr. Eula Bingham, Assistant
Secretary of Labor for Occupational Safety and Health,
United States Department of Labor, Respondents.
 No. 80-2541.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 25, 1982.
Decided May 27, 1982.
 
 George W. Keeley, Halfpenny, Hahn & Roche, Chicago, Ill., for petitioners.
 Shelley D. Hayes, Washington, D.C., for respondents.
 Before SWYGERT, Senior Circuit Judge, CUDAHY, Circuit Judge, and SHADUR, District Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 The petitioners in this case, Fire Equipment Manufacturers' Association, Inc. (FEMA), the Ansul Company (Ansul), and the Elkhart Brass Manufacturing Co., Inc. (Elkhart), challenge certain portions of a final standard which the Occupational Safety and Health Administration (OSHA) issued on September 12, 1980, amending Subpart L, Fire Protection, 29 Code of Federal Regulations § 1910. FEMA is a trade association which represents manufacturers of fire-fighting equipment. Ansul and Elkhart are manufacturers of fire-fighting equipment, including fire extinguishers and 11/2 inch hose, and are members of FEMA. The amended regulations which petitioners challenge permit an employer (1) to choose between two safety options (the deployment of portable fire extinguishers throughout the workplace or the institution of a written evacuation plan) and (2) to use 5/8 inch diameter booster hose in lieu of 11/2 inch hose or fire extinguishers as part of the workplace's fire safety equipment.
 
 
 2
 The essence of petitioners' challenge is that OSHA failed to give adequate notice in the rulemaking proceedings, the new standards are not appropriate to provide a safe workplace, the standards differ impermissibly from a national consensus standard and OSHA's decision to issue the standards is not supported by substantial evidence. It is unnecessary for us to reach the merits of these arguments because we have determined that the petitioners lack standing.
 
 
 3
 Section 6(f)[1] of the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. §§ 651 et seq., provides for judicial review for "(a) person who may be adversely affected by a standard issued under this section ...." The petitioners contend that they have been adversely affected by the new regulations for the following reasons: (1) the new regulations will result in reduced protection for employees in their workplaces; (2) as manufacturers of fire extinguishers and 11/2 inch hose, the petitioners will suffer lost profits; (3) as an association promoting workplace safety, FEMA's objectives have been impaired; and (4) as employers, Ansul and Elkhart will suffer a competitive disadvantage by choosing to provide more safety to their employees through the use of fire extinguishers and greater diameter hose. The contentions will be considered separately.
 
 I. Employee Safety
 
 4
 Article III of the United States Constitution requires that a party seeking to invoke the court's jurisdiction must have a personal stake in the outcome of the controversy. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). A plaintiff must generally assert his own legal rights and interests, not those of a third party. Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).
 
 
 5
 There are good and sufficient reasons for this prudential limitation on standing when rights of third parties are implicated-the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.
 
 
 6
 Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). The petitioners in the instant case do not have standing based on their allegation that employees have suffered a loss of workplace protection. This claim involves the interests of a third party; we do not believe that manufacturers or trade associations are the most effective advocate of employee interests.
 
 II. Lost Profits
 
 7
 Petitioners argue that the option involving fire extinguishers and greater diameter hose is the more expensive of the two options provided for by the new standard. Employers considering which option to use in their workplace will choose the less expensive option and as manufacturers of fire extinguishers and greater diameter hose, the petitioners will suffer lost profits. This alleged injury does not suffer from the same fatal deficiency as their allegation of reduced employee safety. In claiming lost profits the petitioners are asserting their own rights and interests and have met the threshold requirement of injury-in-fact. There are other nonconstitutional limitations on standing, however, which must be applied in this case. The interests which the petitioners claim must be "arguably within the zone of interests to be protected or regulated by the statute ... in question." Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).[2]
 
 
 8
 To determine the parameters of the relevant zone-of-interest to be protected, we must "examine the language of the relevant statutory provisions, the pertinent regulations, and the legislative history ..." of the Act. Peoples Gas, Light & Coke Co. v. U.S. Postal Service, 658 F.2d 1182, 1195 (7th Cir. 1981). Section 2(b)[3] of the Act states that the purpose of the Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." The legislative history of the Act reaffirms this: "The purpose of (the Act) is to reduce the number and severity of work-related injuries ...." (1970) U.S.Code Cong. & Ad.News 5177. It cannot be disputed that the interests the Act seeks to protect are the interests of employees in securing safe working conditions.[4] To achieve this purpose, the Act authorizes the Secretary of Labor to promulgate standards of workplace safety and further authorizes the Secretary to compel employer compliance with the standards. See 29 U.S.C. §§ 655, 657-59.
 
 
 9
 Manufacturers, as employers, do have an economic interest within the "zone of interests" regulated by the statute insofar as the Act contemplates a system of employer obligations for the benefit of employee safety and health. The petitioners, however, are not claiming that they, as employers, have been adversely impacted by their obligation to comply with the new regulations.[5] Rather, the petitioners' claim is that the new regulations will result in lost profits to them as manufacturers. The profits of manufacturers of fire-fighting equipment are not within the zone-of-interests protected or regulated by the Act. Petitioners' claim of standing based on lost profits must fail.
 
 III. Organizational Objectives
 
 10
 FEMA maintains that it has standing because it is an association whose purpose, according to its by-laws, is promoting workplace safety and this objective has been adversely affected by the new final standards. FEMA's objectives may be consistent with the goals of the Act but this does not entitle them to standing. Section 6(f) of the Act was not intended to provide trade associations with a forum for expounding their views on what is required to maximize employee safety. Preserving the right of trade associations to promote their objectives is not an interest within the zone protected by the Act. FEMA's contention is really a backhanded attempt to assert the interest of employees, a third party. As discussed above, this interest must be asserted by the employees themselves or their representatives.
 
 IV. Competitive Disadvantage
 
 11
 Elkhart and Ansul argue that they will suffer a competitive disadvantage as a result of the new regulations. The basis of this argument is that as conscientious employers concerned with employee safety, they would choose the safer, more costly option. Less conscientious employers will choose the less costly option which does not adequately protect employees. Thus Ansul and Elkhart will suffer a competitive disadvantage because of their concern for employee safety. The two petitioners insist that eliminating competitive disadvantages which reduced employee safety was one of the interests sought to be protected by the Act. In support of this contention, Ansul and Elkhart cite the legislative history of the Act:
 
 
 12
 Although many employers in all industries have demonstrated an exemplary degree of concern for health and safety in the workplace, their efforts are too often undercut by those who are not so concerned. Moreover, the fact is that many employers-particularly smaller ones-simply cannot make the necessary investment in health and safety, and survive competitively, unless all are compelled to do so.
 
 
 13
 (1970) U.S.Code Cong. & Ad.News 5180. This legislative history and pertinent sections of the Act make it clear that the function of final standards promulgated by the Secretary of Labor is to protect employees by putting employers at an appropriate competitive baseline.[6] Congress did not intend to protect employers from competitive disadvantage and any benefit employers receive in the way of relief from competition is "wholly incidental to the purpose and design of the program." Dialysis Centers, Ltd. v. Schweiker, 657 F.2d 135, 138 (7th Cir. 1981), quoting Geriatrics, Inc. v. Harris, 640 F.2d 262, 265 (10th Cir. 1980), cert. denied, --- U.S. ----, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). If Ansul and Elkhart claim their injury is competitive disadvantage, they have not satisfied the zone of interest test.[7] If they claim they are injured because the competitive baseline is too low, i.e., the competitive baseline reduces safety below an acceptable level, Ansul and Elkhart are again asserting the interests of employees, a third party. Although we applaud the intention of employers genuinely concerned with their employees' safety, we cannot allow employers to litigate employee interests under the Act.
 
 
 14
 The petitioners in this case have not been "adversely affected by a standard" issued under the Act. The petition must be dismissed for lack of standing.
 
 
 
 *
 The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 29 U.S.C. § 655(f)
 
 
 [2]
 The petitioners argue that the "zone of interest" test should not be applied to the Occupational Safety and Health Act. They base this argument on the breadth of section 6(f) of the Act. We disagree. In Association of Data Processing Service Organizations, supra, the Supreme Court applied the test to a clause of the Administrative Procedure Act very similar to section 6(f). Id. 397 U.S. at 153, 90 S.Ct. at 829. Further, in Peoples Gas, Light & Coke Co., supra, 658 F.2d at 1193, we noted that this circuit consistently requires satisfaction of the zone-of-interest test for standing
 
 
 [3]
 29 U.S.C. § 651(b)
 
 
 [4]
 Nothing in the pertinent regulations dissuades us from our conclusion that the paramount purpose of the Act is to provide the Nation's employees with a safe place to work. See 29 C.F.R. §§ 1900-2400
 
 
 [5]
 Employers can usually gain standing from their economic interest in being forced to comply with the amended regulations (e.g., the petitioners could claim that the cost of compliance with the regulations is too high). In this case, however, the new regulations give employers an option and petitioners cannot allege an injury from one of the options where they can choose another which causes them no injury
 
 
 [6]
 The Act was not intended to eliminate all competitive disadvantages. A conscientious employer can always exceed the obligations imposed on him by the Act and choose safer and more costly fire-fighting equipment for the benefit of his employees. For example, if the regulations require a fire extinguisher every ten feet in the workplace, an employer could always place them every five feet, and thus suffer a "competitive disadvantage" for the sake of employee safety. The "injury" to the employer in this hypothetical situation arises not from an adverse impact of the regulation but from the choice of the employer to exceed the minimum requirements
 
 
 [7]
 In Rental Housing Assoc. of Greater Lynn, Inc. v. Hills, 548 F.2d 388 (1st Cir. 1977), the First Circuit held that a competitive injury to an association of landlords was within the zone of interests protected by the Housing and Community Development Act, 42 U.S.C. § 1437f. The court specifically found that landlords were the intended, though not the primary, beneficiaries of the Act. In the instant case, employees are the intended beneficiaries of the Act; employers are not an intended secondary beneficiary