MOTION PICTURE LABORATORY TECHNICIANS AND FILM AND TAPE EDITORS LOCAL 780 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, AFL–CIO, etc., Plaintiffs,

v.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., Defendants.

No. 83 C 6473.

United States District Court, N.D. Illinois, E.D.

June 8, 1984.

Bernard M. Mamet and Paul T. Berkowitz, Chicago, Ill., for plaintiffs.

James P. White, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Motion Picture Laboratory Technicians and Film and Tape Editors Local 780 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO ("Local 780"), for itself and on behalf of all affected individuals it represents, challenges a decision by National Aeronautics and Space Administration ("NASA")[1] to reassign work from the employers of certain Local 780 members to NASA's own in-house employees. Complaint ¶ 9 alleges NASA failed to conduct a "comparative cost analysis" as Office of Management and Budget Circular No. A–76 (the "Circular") requires in such situations.

NASA has moved to dismiss under Fed. R.Civ.P. ("Rule") 12(b)(6) or alternatively for summary judgment under Rule 56,[2] arguing its action is not reviewable by any

---

**1.** Although NASA's Administrator James M. Beggs and two of its officials, Stuart J. Evans and Robert King, are joined as co-defendants, for convenience all three defendants are referred to collectively as "NASA."

**2.** Rule 12(b)'s last sentence permits treatment of Rule 12(b)(6) motions as Rule 56 motions when "matters outside the pleading are presented to and not excluded by the court." NASA moves

court. Local 780 for its part has submitted a short affidavit and moved for summary judgment as well.[3] On March 14, 1984 (before those motions were fully briefed) this Court asked the parties for further submissions on Local 780's standing to sue and on reviewability issues not yet adequately covered. Now briefing on those matters is complete. For the reasons stated in this memorandum opinion and order NASA's motion to dismiss is granted.

NASA's motion to dismiss asserts the non-reviewability of its actions and now (after this Court's March 14 inquiry) Local 780's lack of standing to sue. This Court has concluded the latter ground is persuasive and compels dismissal of the Complaint. That renders moot Local 780's summary judgment motion (though it might well have been considered premature in any case; see n. 3). It also leads this Court to decline the approach suggested in *Peoples Gas, Light & Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1188–89 n. 3 (7th Cir.1981), and then followed in that case (*id.* at 1188–92), of venturing initially into the field of reviewability.[4] Instead it will simply assume arguendo that *some* judicial review is not precluded.

### Local 780's Standing To Sue

NASA lodges two standing arguments:

1. This case does not even present a justiciable controversy because Local 780's injury is not redressable by this Court. Local 780's injury will not be alleviated unless NASA reassigns the work in question to the private sector, but concededly the most this Court can do is to require NASA to conduct a "comparative cost analysis."

2. Local 780 is not within the "zone of interest" of the Circular as required by *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

NASA is only half right, but that is enough to prevail.

■ Its first argument need not detain us long. *Peoples Gas*, 658 F.2d at 1194 & n. 9 held the requirement that a defendant systematically reconsider an earlier decision against the plaintiff creates a sufficient likelihood the plaintiff's injury would be redressed. Relief in such a situation, the court held, is not "purely speculative." Both there and here, defendant had two options and chose one unfavorable to plaintiff: in *Peoples Gas*, after following procedures the plaintiff challenged as inadequate; in this case, after failing to follow procedures the plaintiff says were essential.

alternatively under Rule 56 because it relies on the Circular. However there is no need to invoke Rule 56, because this Court may take judicial notice of the Circular's contents under *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).

**3.** Local 780 business manager Andrew Younger's June 1 affidavit supposedly remedies the problems this Court indicated it had with his February 21 affidavit, which purported to be simply a brief and non-specific verification of the "facts stated" in Local 780's memorandum. Though the new affidavit answers the obvious question of which statements in Local 780's memorandum Younger considers to be facts, it leaves more fundamental problems untouched:

    1. Younger does not reflect any basis for personal knowledge of a number of the facts, such as NASA's failure to conduct a "comparative cost analysis" and its source of labor to accomplish its reassigned work.

    2. In any event the affidavit cannot at this point be an adequate foundation for a summary judgment motion. Discovery has not begun and Younger has not been cross-examined. It really does some violence to the Rule 56 concept to consider that a conclusory verification of a complaint's allegations can entitle the plaintiff to summary judgment at this stage of the proceedings.

**4.** *Peoples Gas*, 658 F.2d at 1189 n. 3 recognizes a drawback of its approach is that it produces dicta. This Court has gone through the entire history of the Circular, the intervening statutory revisions and all the cases dealing with the problem. Suffice it to say (1) those cases really engage in little (or more often no) analysis in arriving at their conclusions that the Circular really has no legal status and (2) the whole notion of engaging in a tortuous analysis to reach a different conclusion, but one that would make no difference at all in the result here, shows why courts should strain to avoid dicta rather than to generate them. Hence the arguendo assumption stated in the next sentence of the text.

■ But NASA's second standing contention is fatal to Local 780's claim. *Peoples Gas*, 658 F.2d at 1195 requires the purpose of the statute relied on to be ascertained from the language of the statute itself, its regulations and its legislative history. NASA probably goes too far when it argues the only purpose of the Office of Federal Procurement Policy ("OFPP") Act of 1974, of subsequent versions of that Act[5] and of the Circular, which is issued pursuant to the various OFPP Acts, is to provide efficient procurement. It is true the current OFPP Act's statement of findings and purpose, 41 U.S.C. § 402, refers only to efficiency and coordination of "procurement policies." If that is the sole extent of the interests implicated by the Circular, then of course no one but the government itself is within the "zone of interest" of the Circular. *Cf. American Federation of Government Employees v. Stetson*, 86 CCH Lab.Cas. ¶ 33,819, at 48,-851 (D.D.C.1979); *American Federation of Government Employees v. Hoffmann*, 427 F.Supp. 1048, 1083 (N.D.Ala.1976).

But an examination of existing "procurement policies" reveals one of those policies is reliance whenever possible on the private sector. Thus original OFPP Act § 6(d)(3),

Pub.L. No. 93-400 (88 Stat. 796, 798) (1974) required the OFPP Administrator to engage in activities "relating to reliance by the Federal Government on the private sector to provide needed property and services." Similarly, both the 1974[6] and the 1979[7] United States Code Congressional and Administrative News legislative histories of their respective OFPP Acts referred to the policy of reliance on the private sector. And the Circular itself is expressly aimed at promoting reliance on the private sector. Its most recent Transmittal Memorandum "reaffirms the Government's general policy of reliance on the private sector," and under Circular § 8(c) if the cost of public sector production of particular government needs is either greater than *or equal to* the cost of private sector production, those needs must be contracted to the private sector.

All that evidence places government contractors squarely within the "zone of interest" of the Circular. Congress has decided such contractors should receive government business in certain cases, such as when the cost to the government is equal to or less than the cost of in-house production.[8] When government business goes in-house, contractors are the paradigmatic ob-

---

**5.** 41 U.S.C. §§ 401–412 codifies the current version of the 1974 statute and its subsequent reenactments (collectively the "OFPP Acts").

**6.** Senate Committee on Government Operations' Comment on section 6(c)(1) of its 1974 proposed bill (S. 2510) cited the Circular as an example of a policy to be enforced under the OFPP Act (Sen.Rep. No. 93–692, 1974 U.S.Code Cong. & Ad.News 4589, 4600–01):

> Although there are some statutory directives, OMB Circular A–76 is the primary vehicle for establishing and implementing the national policy to rely on private enterprise for the provision of the Government's goods and services.

Section 6(c)(1) of S. 2510 was enacted as OFPP Act § 6(d)(3), 88 Stat. at 798. See Joint Conf. Rep. No. 93–1268, 1974 U.S.Code Cong. & Ad. News 4623, 4626.

**7.** NASA points out Congress expressed its displeasure in 1979 over the repeated reissuance of the Circular (H.R.Rep. No. 96–178, 1979 U.S. Code Cong. & Ad.News 1492, 1495):

> OFPP's recent reissuance of OMB circular A–76, for example, totally ignored the Procurement Commission's recommendation that

Federal policy on the government's reliance on the private sector should be set by Congress.

However Congress stopped short of withdrawing its authorization for the Circular (*id.* at 1501):

> After extensive discussion with OMB and GAO, the Committee amended H.R. 3763 to grant OFPP limited authority to issue policy directives in furtherance of the principal policy objectives of the Office of Federal Procurement Policy Act. This authority is to be exercised only with the concurrence of the Director of the Office of Management and Budget.

**8.** Just because the policy of preferring the private sector may perhaps arise out of a perception the private sector is cheaper to the *government* in the long run, that does not necessarily make the government's efficiency purpose the same as its purpose of promoting reliance on the private sector. Those two purposes are separated by a congressional judgment that should not be second-guessed by the courts. It is a mistake to read backwards from every congressional judgment to its selfish roots, for the re-

jectors because their interest in obtaining business is identical to the congressional interest (implemented by the Circular) in delivering business to private contractors.

But the immediacy of interest of employers is not in turn identical to any immediacy of interest of employees. Local 780 and its members would likely (though not necessarily) benefit from the reassignment of the work to the private sector. That likelihood, however, is only a collateral (and really aleatory) consequence of the directly intended benefit to their employers and former employers.[9] If for example their employers, as government contractors, could do the work more cheaply but with less labor than the government could in-house, the interests of the government and the employers would be promoted by reliance on the public sector while the interests of the employees would not. Thus Local 780 does not meet the requirement of *Peoples Gas*, 658 F.2d at 1196–97 that its interests "match" that of the government.

This distinction between the interests of employers and the interests of their employees finds its counterpart elsewhere in the law. One obvious example is employee safety rules, for where such rules are concerned the interests of employers and employees are antithetical—the more money the employers spend the safer their employees can be. Under elementary standing principles *Fire Equipment Manufacturers' Association v. Marshall*, 679 F.2d 679, 681 (7th Cir.1982) refused to permit

employers to assert the safety interests of their employees.

Yet even in the more difficult case in which interests of employers and employees seemingly coincide, *American Federation of Government Employees v. Dunn*, 561 F.2d 1310, 1313 (9th Cir.1977) ruled only employers could contest government bidding procedures "by virtue of their relationship to the government." In short, employees were one step further removed from the procurement process, and that additional step placed them outside the "zone of interest" of the statute in question.[10] This case really follows a fortiori from *Dunn*, because the correlation between the directly-intended benefit to private sector employers and the potential peripheral benefit to their employees is substantially more attenuated here.

Indeed, just this week the unanimous United States Supreme Court opinion in *Block v. Community Nutrition Institute*, —— U.S. ——, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) confirmed the validity of the approach and analysis reflected in this opinion and in *Dunn*. In *Block* (as here) suit was brought under the Administrative Procedure Act, though the statute there (unlike the situation here) clearly permitted *some* judicial review of agency action.[11] What is significant about *Block* for current purposes is that the Court found the plaintiff consumers of milk, though significantly affected by the Secretary of Agriculture's action,[12] had no standing to sue though (or

---

ductio ad absurdum of such analysis is to conclude that every law is passed to promote the "purposes" of congressmen, and under the "zone of interest" test only congressmen could sue to enforce them.

**9.** If the question is viewed analytically, Local 780 may be characterized as representing part of the pool of available labor. As work shifts from private to public sector, the public sector would draw more heavily on the available labor pool. If we assume equal working conditions and equal labor intensity in the private and public sectors, the only groups even affected would be owners in the private sector and administrators in the public sector. Employees thrown out of work in the private sector would of course be harmed but others filling the new jobs in the public sector would be benefited to an equal degree. Nothing in the statutory lan-

guage, the legislative history or the regulations even hints at any concern about that allocation of labor opportunities.

**10.** *Dunn* contrasted the interests of disappointed government employees with disappointed private sector contractors, but *not* on the basis they came from different sectors of the economy. Rather it distinguished them on the basis that the employees were further removed from the bidding process than were the private sector contractors.

**11.** That really parallels the arguendo assumption made in this opinion (see text at n. 4).

**12.** In fact plaintiffs' arguable standing in *Block* was substantially more persuasive than here, because "the general purpose sections of the Act

perhaps even because) producers and handlers of milk *could* sue to challenge the Secretary's violations of law. As the Court put it (*id.* at —— - ——, 104 S.Ct. at 2455):

> But the preclusion issue does not only turn on whether the interests of a particular class like consumers are implicated. Rather, the preclusion issue turns ultimately on whether Congress intended for that class to be relied upon to challenge agency disregard of the law.

And the Court ultimately found (*id.* at ——, 104 S.Ct. at 2458) the parties "directly affected by the statutory scheme"—the producers and handlers, who "have interests similar to those of consumers"—had to be the sole parties permitted "to challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated." *Block*'s parallel to the current case is too obvious to require extended treatment.

### Conclusion

Local 780's cause of action is dismissed with prejudice because Local 780 falls outside the "zone of interest" of the Circular. Its summary judgment motion is dismissed as moot.

allude to general consumer interests" (*id.* at ——, 104 S.Ct. at 2455), while nothing in the statute or regulations involved here hints at *employee* interests as a subject of concern.