**Vernon M. PUPPE, Deceased, by Wanda PUPPE, Surviving Spouse, and Candice Brouse and Deborah Lynn Puppe, Surviving Children, Plaintiffs,**

v.

**A.C. AND S., INC., et al., Defendants.**

**Civ. No. A2–86–78.**

United States District Court, D. North Dakota, Northeastern Division.

March 28, 1990.

David Thompson, Fargo, N.D., and Harold Anderson, Grand Forks, N.D., for plaintiffs.

Jon Parrington, Edina, Minn., Paul Woutat, Grand Forks, N.D., Joseph T. Dixson, Jr., Minneapolis, Minn., Albert A. Wolf, Bismarck, N.D., Jay Feidler, Grand Forks, N.D., Eugene Buckley, St. Paul, Minn., Ralph Walker, Des Moines, Iowa, and Duane Arndt, Minneapolis, Minn., for defendants.

Ronald McLean, Fargo, N.D., for A.C. and S., Inc.

Michael Fiergola, Bismarck, N.D., for Raybestos–Manhatten, Inc.

Douglas Herman, Fargo, N.D., for Clarke Equipment Co.

Michael D. Nelson, West Fargo, N.D., and Gary R. Sharp, Cheatham & Acker, Detroit, Mich., for H.K. Porter Co., Inc.

Michael McNair, Fargo, N.D., for Atlas Turner, Inc.

David Welte, Polsinelli Law Firm, Kansas City, Mo., for Standard Asbestos Insulating & Mfg. Co.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

### INTRODUCTION

On March 15, 1990 defendants GAF Corporation; National Gypsum Company; Pfizer, Inc.; Union Carbide Corporation; and United States Gypsum Company filed a motion with this Court. Defendants requested that this Court "exclude any potential claim made by plaintiffs for punitive damages...." Several letters have been filed by defendants American Hoist and Derrick Company (now Amdura); and Clark Equipment Company. In their letters, these defendants ask to join in the motion to exclude "any potential claim by plaintiff for punitive damages." At the pretrial conference for this case held in Fargo, North Dakota on March 15, 1990 several other defendants expressed similar concerns. On March 23, 1990 the defendants who originally mentioned concerns with North Dakota's policy on punitive damages informed the Court they had settled. The case was removed from state court pursuant to 28 U.S.C. § 1441 on May 20, 1986 because of complete diversity to 28 U.S.C. § 1332. The case was assigned to this Court by Judge Webb on October 5, 1989.

### FACTS

This case is a wrongful death action brought by the survivors of decedent Vernon Puppe. Puppe died of mesothelioma on April 26, 1984. Mesothelioma is a soft tissue cancer of the chest and abdomen, and has been attributed in causal terms to a victim's exposure to asbestos fibers. Mesothelioma is always fatal.

Plaintiffs claim that Puppe was employed as an asbestos insulation helper and handler by the C.W. Schmidt Plumbing and Heating Co. during 1959. He worked at a large insulation project in a heating plant at the Minot Air Force Base in Minot, North Dakota. Puppe's duties included the cutting of asbestos-containing block and pipe covering, the spraying of asbestos texturing compounds, and the mixing of powdered asbestos cements. Puppe's survivors claim that in the course of his employ-

ment, he inhaled and ingested asbestos fibers from the insulation products which he and his nearby co-workers were installing.

Also, Puppe was later employed as a crane operator by the Swingen Construction Co. of Grand Forks, North Dakota from 1966 through 1981. The cranes Puppe worked with employed friction clutches and brakes. The friction clutches and brakes used asbestos clutch linings, asbestos clutch facings, asbestos brake linings, and asbestos brake drums. Puppe's survivors claim that during the operation of these cranes, dust grindings from the brake linings would fill the cab of the vehicle, causing the operator's area to be heavily contaminated by asbestos fibers. Plaintiffs claim that as operator of the crane, Puppe inhaled and ingested these asbestos fibers.

Puppe had been dead for almost two years when this case was filed. His survivors have filed suit claiming the wrongful death was caused by the acts and omissions of the defendants. Plaintiffs claim compensatory damages for the wrongful death, medical and funeral expenses, punitive, and exemplary damages from the defendants. Defendant's motion requests the exclusion of any potential claim made by plaintiffs for punitive damages. Defendants claim that North Dakota law does not allow such a claim.

This is a diversity case. In diversity cases a federal court must apply the law of the state where the United States District Court is located. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). N.D.C.C. § 32–21–01 provides a cause of action for wrongful death. N.D.C.C. § 32–21–02, in determining the measure of recovery, provides:

> In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from the death to persons entitled to recovery.

This Court must interpret this statute to give it the same effect as would a North Dakota court.

---

1. N.D.C.C. § 32–03.2–11 became effective July 8, 1987 and applies only to claims accruing after

ISSUES

I. *Whether North Dakota Law Allows Punitive Damages to Flow from a Claim for Wrongful Death.*

II. *Due Process Considerations.*

  A. Fairness to the Defendants of Multiple Punitive Verdicts.

  B. Heightened Standard of Proof.

  C. Interests of Future Plaintiffs.

III. *Procedure for Trial.*

DISCUSSION

I. *Whether North Dakota Law Allows Punitive Damages to Flow from a Claim for Wrongful Death.*

Punitive damages have been defined as appropriate "when the defendant has been guilty of oppression, fraud or malice, actual or presumed...." *See* N.D.C.C. § 32–03.2–11 (1987).[1] Punitive damages are given "in addition to the actual damages ... for the sake of example and by way of punishing the defendant." *Id.* Proponents of punitive damages believe that, by giving plaintiffs damages over and above the full compensation for their injuries, defendants are punished, taught not to repeat culpable behavior, and others are deterred from following defendant's dubious example. W. Prosser, *The Law of Torts* § 2, p. 9 (4th Ed.1971).

Defendants in the present case maintain that punitive damages are not available to the plaintiffs. In support of this assertion, they cite *Johnson v. International Harvester Co.,* 487 F.Supp. 1176 (D.N.D.1980). In *Johnson,* Judge Benson made three findings:

> 1) That punitive damages could not be recovered under the North Dakota wrongful death statute,
>
> 2) That no common law action for wrongful death can exist in North Dakota, and
>
> 3) That the North Dakota wrongful death statute does not discriminate against wrongful death claimants in fa-

---

that date. It is therefore inapplicable in this case.

vor of personal injury and property damage plaintiffs, thereby foreclosing an equal protection argument.

*Id.* at 1177–80. Judge Benson reached a similar decision in *Johnson v. American Aviation Corp.*, 64 F.R.D. 435 (D.N.D. 1974).

In reaching his conclusions, Judge Benson carefully examined North Dakota statutes and caselaw to determine what the North Dakota Supreme Court would do if faced with a similar problem. Judge Benson's most recent examination of the status of the wrongful death statute of North Dakota was in 1980. The decade since *Johnson* has seen the North Dakota Supreme Court make radical changes in the way it interprets recovery under its wrongful death statute. A fresh examination is necessary to determine whether it would allow recovery for punitive damages today.

Wrongful death statutes have had a peculiar and tortured history. *See Hopkins v. McBane*, 427 N.W.2d 85, 88–90 (N.D. 1988). In the early 19th century, Lord Ellenborough declared that "[i]n a civil Court, the death of a human being could not be complained of as an injury." *Id.* at 88 (citing *Baker v. Bolton*, 1 Camp. 493, 170 Eng.Rep. 1033 (K.B.1808)). Lord Ellenborough's decision was widely criticized. *Hopkins*, 427 N.W.2d 85, 88 (N.D.1988). As such, the inability to recover for wrongful death made it more profitable for tortfeasors to kill plaintiffs than to injure

them. *Id.* Families of the victim, who were often left destitute, were left without a remedy by the *Baker* decision. *Id.* In response to this problem, Parliament passed the Fatal Accidents Act of 1846,[2] also known as Lord Campbell's Act, to allow compensation for the families of those killed. *Id.* Every American state now has a similar statutory remedy for wrongful death. *Id.*

These statutes were not met with much favor by the courts of the time and were narrowly construed so as to permit recovery only for economic loss. *See Hopkins v. McBane*, 427 N.W.2d 85, 89 (N.D.1988). These holdings were the results of the mores of the time, a time in which life was cheap and suffering was common. *Id.* at 89–90. The social conditions of the day influenced the decisions limiting recovery under wrongful death statutes to lost wages. *See id.* at 89–90. In one of the first cases in which North Dakota applied its wrongful death statute, the North Dakota Supreme Court noted that

> [u]pon one point the cases are united, and that is that the only damages recoverable in this action are for the pecuniary loss. Nothing can be recovered for the loss of society or for damages in the way of solatium.

*Haug v. Great Northern Ry. Co.*, 8 N.D. 23, 77 N.W. 97, 101 (1898). It was upon *Haug* that the North Dakota Supreme Court based its decision to deny punitive

---

**2.** Lord Campbell's Act (9 & 10 Vict., ch. 93) was entitled "An Act for compensating the Families of Persons killed by Accidents." It provided:

WHEREAS no Action at Law is now maintainable against a Person who by his wrongful Act, Neglect, or Default may have caused the Death of Another Person, and it is oftentimes right and expedient that the Wrongdoer in such Case should be answerable in Damages for the Injury so caused by him: Be it therefore enacted by the Queen's most Excellent Majesty ... That whensoever the Death of a Person shall be caused by wrongful Act, Neglect, or Default, and the Act, Neglect, or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof, then and in every such Case the Person who would have been liable if Death had not ensued shall be liable to an Action for Damages, notwithstanding the

Death of the Person injured, and although the Death shall have been caused under such Circumstances as amount in Law to Felony.

II. And be it enacted, That every such Action shall be for the Benefit of the Wife, Husband, Parent, and Child of the Person Whose Death shall have been so caused, and shall be brought by and in the Name of the Executor or Administrator of the Person deceased; and in every such action the Jury may give such damages as they may think proportioned to the Injury resulting from such Death to the Parties respectively for whom and for whose Benefit such Action shall be brought; and the Amount so recovered, after deducting the Costs not recovered from the Defendant, shall be divided amongst the before-mentioned Parties in such Shares as the Jury by their Verdict shall find and direct.

*Hopkins v. McBane*, 427 N.W.2d 85, 88–89 (N.D. 1988).

damages unless expressly allowed in the statute. *See Hyyti v. Smith*, 67 N.D. 425, 272 N.W. 747, 750 (1937). In *Hopkins v. McBane, Haug* was overruled because it was felt "[t]hat this barbarous concept of the pecuniary loss ... should control our decisions today is a reproach to social justice." *Id.* at 90 (quoting *Wycko v. Gnodtke*, 361 Mich. 331, 105 N.W.2d 118, 121 (1960)). This Court believes that the *Hopkins* ruling casts serious doubt upon the continued validity of *Hyyti*.

*Hopkins* dealt with an action brought by a mother against a physician and hospital for the wrongful death of a viable fetus. After the trial court had entered judgment in favor of the mother, the defendants appealed. Defendants argued that damages for loss of society, comfort, and companionship could not be recovered under the wrongful death statute, which also was claimed to preclude damages for mental anguish. Defendant's argument was based on the premise contained in North Dakota caselaw that limited damages allowable under the wrongful death statute to pecuniary damages. This is the same premise, found in some of the same cases, which does not allow recovery of punitive damages in a case of wrongful death.

The North Dakota Supreme Court laid out the historical background cited above to begin its examination of the wrongful death statute. *See Hopkins v. McBane*, 427 N.W.2d 85, 88–90 (N.D.1988). The North Dakota Supreme Court noted that amongst the world's industrialized nations, only the United States and the British Commonwealth members fail to "simply treat wrongful death actions in the same way as personal injury actions...." *Id.* at 90. The Court described allowing jurors to determine certain issues, in this case mental anguish and loss of consortium, in personal injury cases but not in wrongful death cases to be an "anomaly". *Id.* at 93.

Such an anomaly was cited as "inconsistent with the high regard with which we view the right to a jury trial." *Id.* The

North Dakota Supreme Court decided to eliminate this anomaly as an anachronism. *Id.* The policy of allowing certain damages in personal injury actions but not in wrongful death actions was labelled "illogical and unjust." *Id.* Addressing the concern that such changes in policy should be left to the legislature, the North Dakota Supreme Court responded that "it was judges ... who adopted the rule that such damages are not recoverable and judges can remove the prohibition." *Id.* at 93–94.

■ *Hopkins* has convinced this Court that North Dakota now recognizes a claim for punitive damages in wrongful death actions. Allowing certain claims for a personal injury case but not for a wrongful death claim places our judicial system into disrepute as inconsistent and contradictory. While there may exist good arguments against the use of punitive damages, these are best addressed on grounds other than that they do not exist under North Dakota law. This Court holds that *Hopkins* overruled the law that Judge Benson used to make his decisions to exclude punitive damages in *Johnson* and *American Aviation*. This Court is bound to follow North Dakota law; consequently, I find that punitive damages may be recovered in a wrongful death action.

## II. *Due Process Considerations.*

■ Much of the recent discussion on punitive damages has focused on the possibility that the existing system for providing punitive damages violates a defendant's due process rights. When a court reviews a law to determine its procedural fairness, it reviews the system of decision making to determine whether or not a government entity has taken an individual's life, liberty, or property without the fair procedure or "due process" required by the fifth and fourteenth amendments.[3] J. Nowak, R. Rotunda, J. Young, *Constitutional Law*, 416–17 (2nd ed. 1983). Procedural review

---

**3.** The relevant provisions are:
  "No person shall be ... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.; and

"[N]or shall any State deprive any person of life, liberty, or property, without due process of Law...." U.S. Const. amend. XIV, § 1.

is limited in scope. *Id.* at 417. Procedural due process guarantees only that there is a fair decision-making process before the government takes some action directly impairing a person's life, liberty, or property. *Id.* This procedural aspect of the due process clause does not protect against the use of arbitrary rules of law which are the basis of those proceedings. *Id.*

The due process clause also has an aspect known as the "substantive guarantee of due process." *Id.* at 443. This substantive guarantee requires that legislation have a rational relationship to a legitimate end of government. *Id.* If a law has no such relationship, it unconstitutionally deprives those persons it affects of a liberty interest. *Id.* A party who wishes to challenge the constitutionality of economic legislation has a difficult task. In a situation "where the legislative judgment is drawn in question, [the inquiry] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed, affords support for [the legislation]". *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). Not only will courts presume that a legislature had a reasonable basis for enacting a particular economic measure, but they will also hypothesize reasons for the law's enactment if the legislature fails to state explicit reasons for its judgment. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 490, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Justice Black eloquently stated the role of the judiciary when he stated "[courts must] refuse to sit as a 'superlegislature to weigh the wisdom of legislation'.... Whether the legislature takes for its textbook Adam Smith, Herbert Spencer, Lord Keynes or some other is no concern of ours." *Ferguson v. Skrupa*, 372 U.S. 726, 731–32, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1963). This presents a difficult task for those challenging the constitutionality of punitive damages on a due process basis.

Several approaches to this problem have great merit and raise some interesting considerations for a trial court. Many of the recent issues concerning the constitutionality of punitive damage statutes have been noted, although not acted upon, by the Supreme Court. A brief examination of some of the more recent issues will be helpful in deciding whether to apply such matters to the present case.

A. Fairness to the Defendants of Multiple Punitive Verdicts.

Punitive damages are designed to punish defendants for their wrongdoing, and to deter the defendant and others from repeating harmful behavior. Punitive damages serve neither to compensate plaintiffs for their injuries nor as a bonus from which attorneys fees and other costs of litigation may be culled. This has raised a question with some as to just what exactly a finding by a jury that a plaintiff may recover punitive damages means. Some think that if awarded in a certain context, a punitive damage award, or awards, can preclude future awards.

Other federal courts have had more exposure to toxic tort litigation than our own. In the Eastern and Southern Districts of New York, for example, mass litigation has gone on for decades concerning such substances as asbestos, Agent Orange, and MER/29. Judge Weinstein certified a mandatory punitive damage class action under Rule 23(b)(1)(B) in the Agent Orange litigation before him. *See In re Agent Orange Prods. Liab. Action*, 100 F.R.D. 718, (E.D. N.Y.1983), *aff'd, In re Diamond Shamrock Chems. Co.*, 725 F.2d 858, 862 (2d Cir.1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). Judge Weinstein believes that, in theory, an award of punitive damages represents a finding by the jury that the defendant was sufficiently punished for the wrongful conduct. *See In re Agent Orange*, 100 F.R.D. 718, 728 (E.D.N.Y.1983). When a jury awards punitive damages Judge Weinstein therefore believes, as a matter of policy or as a matter of due process, there must be some limit to the number of times a defendant may be punished for a single transaction. *Id.* At the very least, Judge Weinstein would allow trial courts passing on future claims of punitive damages against the same defendant to admit evidence of

prior awards to be used by a jury to reduce awards to other parties seeking additional punishment for the same misconduct. *Id.*

As a means for certifying a class action, this theory of punitive damages has great merit. In the context of an isolated toxic tort trial, begun nearly two decades after the first similar litigation, however, this Court is not so certain such an approach is helpful. Judge Weinstein refers to the number of times a defendant may be punished for a single transaction; this Court is not so certain that a decades long history of concealing the true effects of asbestos from different people under different circumstances, as alleged by plaintiffs, can be viewed as a "single transaction." Were the actions that plaintiffs allege to be negligent a single occurrence, for example a spill from an oil tanker, this Court could perhaps accept the theory that a limitation existed on the amount of times a defendant could be punished for that single event. Asbestos litigation concerns defendants who are alleged to have repeatedly and purposefully concealed the dangers of their products. These separate and continued acts of concealment are claimed to have caused the separate injuries of many. This Court does not believe that multiple punitive damage awards are an undue burden on a defendant accused of continued misconduct under a procedural or a substantive due process analysis if a jury finds that such conduct occurred.

### B. Heightened Standard of Proof.

Another criticism of punitive damages centers on the "criminal" nature of punitive damages. *See Browning–Ferris Indus. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 2933, 106 L.Ed.2d 219 (1989) (Justice O'Connor, dissenting). Such an examination would have to center on the procedural aspects of an alleged due process

violation. Justice O'Connor,[4] in a case where the Supreme Court examined whether punitive damages violate the excessive fines clause of the Eighth Amendment, noted that punitive damages are *"private fines* levied by civil juries." *Id.* (emphasis in original). Justice O'Connor believes that "a governmental entity can abuse its power by allowing civil juries to impose ruinous punitive damages as a way of furthering the purposes of its criminal law." *Id.* As a method of correcting perceived problems with punitive damages, added procedural safeguards are suggested. This would include raising the burden of proof from "by a preponderance of the evidence" to "clear and convincing evidence." *See Fisher v. Johns–Manville,* 103 N.J. 643, 666–67, 512 A.2d 466 (1986) (Justice O'Hern, dissenting).

This Court finds many of the solutions to dealing with the "problem" of excessive punitive damages awards attractive at first blush but ultimately of little use to a trial court. First, this Court notes that such remedies are always designed to grant defendants relief from "excessive" punitive damages awards. A trial court has no idea of what size a jury verdict of punitive damages will be until it is returned. Any remedy to deal with "excessive" punitive damages would therefore have to be applied to every situation where an instruction on punitive damages is given. Absent a statutory ceiling on the permissible size of a punitive damage award, unless a court determines that *any* punitive damages award violates constitutional concepts of due process, which this Court does not, safeguards prior to jury deliberation cannot be applied only to "excessive" punitive awards.

The number of times a given defendant has previously been assessed punitive dam-

---

**4.** Throughout this memorandum, certain opinions are referred to as being those of "Justice O'Connor." This is not to imply that these views are hers alone. Indeed, several other Justices have expressed similar opinions, and certain *Appellate Judges* have also noted what they term due process problems with punitive damages. Justice O'Connor, however, has written several penetrating concurrences and dissents

on cases involving punitive damages. *See e.g.; Browning–Ferris Indus. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). When this Court refers to those who wish to restrict punitive damages on due process grounds, while *I* may refer to Justice O'Connor, I mean all of those with similar views.

ages is indeed relevant to determining the amount necessary to deter certain conduct. A possible trial approach would be to allow the *defendants* to submit to the jury the amounts they have already paid out in punitive damages if they so choose. Such a procedure, however, might have the undesired effect of ensuring, rather than reducing, a punitive damage award.

The second oft mentioned concern relates to the right to due process as it concerns the actual proceedings held. This includes suggestions such as a bifurcated trial for the issues of liability and punitive damages, and the court rather than the jury determining the amount and the propriety of the punitive damage award. *See Punitive Damages: Empirical Findings*, a Study by the Rand Institute for Civil Justice (1987). But defendants against whom punitive damages are awarded have a right to a jury trial with a right to appeal. Seemingly, this would be sufficient process. Alert counsel also can make a process of bifurcation of little use. Intent and knowledge of one's actions needed to show malice for a punitive damages claim are often relevant in determining whether the elements of another claim, such as negligence or strict liability, have been met. Accordingly, this Court finds no procedural due process problems with punitive damages.

Punitive damages exist to discourage certain types of behavior. Proposals exist to limit punitive damage awards to a certain amount, or to limit these awards to two or three times actual damages. Such proposals often neglect the reason why punitive damages are allowed. Punitive damages exist to make certain behavior, what I will refer to as "bad" conduct, unprofitable. "Bad" is defined by statute as "when the defendant has been guilty of oppression, fraud, or malice." N.D.C.C. § 32-03-07. Sometimes the actual damages of a plaintiff are small, but a larger award may be necessary to punish the defendant. If determinations limiting the availability of punitive damages are to be made, this determination must be made by the state legislature. *See Moran v. Johns–*

*Manville Sales Corp.*, 691 F.2d 811 (6th Cir.1982).

This Court is aware that punitive damages have created issues of great concern to the court system. Amounts awarded for punitive damages have been skyrocketing. Justice O'Connor recently noted that as recently as fifteen years ago, the largest punitive damage award affirmed by an appellate court in a products liability case was $250,000. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 2924, 106 L.Ed.2d 219 (1989) (Justice O'Connor, dissenting). Since then, awards up to thirty times as high have been sustained on appeal. *Id.* Such awards can have a detrimental effect on the research and development of new products. *Id.* Justice O'Connor has referred to such a situation as a "grant of wholly standardless discretion to determine the severity of punishment ... [as] inconsistent with due process."

This Court is not convinced that a jury's determination of punitive damage awards is "standardless." The standard the jury applies in determining whether to grant an award is the culpability of the defendant. To determine the amount of the award, the jury determines the amount needed to deter such behavior in the future, the amount it takes to make certain types of conduct unprofitable. Toxic tort litigation, such as asbestos cases, can lead to large punitive damage awards that are "amply justified." *City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559 (D.S.C.1986). These large awards are often directly tied to the "recklessness and willfulness" of the defendant. *Id.* If there is no grounds for a punitive damage award, a court need not reach for a constitutional ground to reverse it. Such an unjustified award can and should be reversed by either the trial or appellate courts on the merits.

The *Browning–Ferris* case provides an example of the nature of due process now available. A jury awarded a verdict of $51,146 in compensatory damages and $6 million in punitive damages to a plaintiff whose business had been damaged by a larger competitor whose goal was to

"squash [the plaintiff] like a bug." *Id.* 109 S.Ct. 2909, 2912 (1989). The trial court refused to reduce the amount awarded in punitive damages, trebled plaintiff's compensatory award under the Sherman Act and awarded him attorney's fees. The Second Circuit Court of Appeals affirmed the trial court's rulings both as to liability and damages. *See* 845 F.2d 404 (2nd Cir.1988). The United States Supreme Court also declined to reduce the damage awards as excessive under state law. 109 S.Ct. 2909. This Court can only assume that under the facts of the case, the jury, trial court, appellate court, and the Supreme Court felt the punitive damages not to be excessive. If this Court is in this case presented by a punitive damage award which appears excessive, it will be reduced; the constitutional argument that excessive punitive damages awards violate due process need never be reached.[5]

### C. Interests of Future Plaintiffs.

A final argument against punitive damages in a toxic tort setting has been that the awarding of these impinges the rights and interests of future plaintiffs. *See Jackson v. Johns–Manville Sales Corp.,* 727 F.2d 506, 524–30 (5th Cir.1984). Such concerns are based on a recent study for the U.S. Department of Labor that estimates more than 21 million American workers were significantly exposed to asbestos in the past forty years. *Id.* at 524. This same study projected over 200,000 deaths from asbestos-related cancers by the end of the century, a number that does not include deaths from asbestosis. *Id.* Over 20,000 personal injury lawsuits have been filed nationally in connection with workers's asbestos injuries, many of these asking for punitive damages. *Id.* This has made some courts fear that if punitive damages awards are allowed to the initial plaintiffs, inadequate funds will be available to meet future compensation liabilities to already injured persons. *See id.* at 524–25.

While these concerns are certainly not groundless, this Court sees two problems with such an approach. The first is that no one in the present case has standing to advance the claims of these unavailable plaintiffs. Parties to a lawsuit must generally assert their own legal rights and interests, not those of a third party. *Fire Equip. Mfrs. Ass'n, Inc. v. Marshall,* 679 F.2d 679 (7th Cir.1982) (citing U.S. Const. Art. 3, § 2, cl. 1). Since no one in this lawsuit has standing to assert such claims, they must be denied.

Even if this Court does consider the claim that the rights of future plaintiffs are harmed by North Dakota's allowing punitive damages in a wrongful death action, there exists no grounds to overrule such a policy. Using a substantive due process analysis, *any* rational reason supporting North Dakota's decision to allow punitive damages will defeat a challenge to that law. Part of the reason punitive damages exist is to discourage certain types of conduct. Rational people could determine that it is worthwhile to punish those whose conduct is objectionable in order to get them to cease their activities even if such a policy bankrupts the tortfeasor before all of the injured can recover. Toxic tort litigation usually involves defendant manufacturers accused of showing wanton indifference to the health of their employees and the public. Punitive damages, if large enough, can severely disrupt a defendant's business enterprises. While the disruption of a defendant's enterprises has harsh consequences to that concern's employees, stockholders, and future claimants, one court has suggested that the demise of the manufacturer in such circumstances is not a "necessarily untenable" result. *Acosta v. Honda Motor Co.,* 717 F.2d 828, 838 n. 15 (3d Cir.1983). This Court agrees that in

---

**5.** Recent examples of trial or appellate courts striking awards for punitive damages in post verdict j.n.o.v. decisions include *Maxey v. Freightliner Corp.,* 450 F.Supp. 955 (N.D.Tex. 1978) ($10 million punitive damage award overturned by court); *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981) (upheld trial court's reduction in punitive damage award from $125 million to $3.5 million); and *Stambaugh v. Int'l Harvester,* 106 Ill.App.3d 1, 61 Ill.Dec. 888, 435 N.E.2d 729 (1982) (reduced punitive damage award, which had already been reduced by trial court from $15 million to $7.5 million, to $65,000).

certain circumstances, this can indeed be the case.

### III. *Procedure for Trial.*

 Plaintiffs in the present case made a claim for punitive damages in their complaint. In its efforts to determine fair trial procedures, this Court has observed many proposals. It offers the following procedure to be used for punitive damages claims in the cases proceeding before it:

1) Plaintiffs having declared a claim of punitive damages in their complaint, the Court will omit all reference to this claim when explaining the nature of the case to the jury;

2) Counsel for neither side may mention the claim for punitive damages nor give evidence solely in support of that claim during the trial of the principal case;[6]

3) If the jury then proceeds to find a plaintiff's verdict as to liability and damages, the Court will then allow evidence as to an appropriate amount of punitive damages and a brief argument by counsel for each side. At this time the *defendants only* may show previous punitive damage awards recovered from them for the same type of misconduct (subject, of course, to attacks on the showing as to its accuracy); and

4) Issues of punitive damages would then be assigned to the same jury that heard the case in chief.

Such a procedure should not greatly alter the length of trial nor change significantly the preparation required of counsel. Only the order of evidence would need to be changed.

### CONCLUSION

As a matter of North Dakota law, this Court has determined that punitive damages claims may be argued to a jury in wrongful death actions. In an effort to simplify matters, such an argument may be presented to the jury only after a verdict in favor of plaintiff is returned as to liability

and damages. This Court also finds no due process bar to punitive damages in toxic tort litigation such as this.

THEREFORE IT IS ORDERED:

1) THAT DEFENDANT'S MOTION TO "EXCLUDE ANY POTENTIAL CLAIM MADE BY PLAINTIFFS FOR PUNITIVE DAMAGES" IS DENIED, AND

2) THAT THE PROCEDURE FOR PRESENTING PUNITIVE DAMAGES TO THE JURY DISCUSSED WITHIN THIS OPINION IS ADOPTED FOR THIS TRIAL.

---

6. As stated earlier, this Court has no doubt that counsel for plaintiffs will find some way of mentioning conduct of the various defendants to prove negligence or breach of warranty which could also be perceived as useful to prov-

ing the "oppression, fraud or malice" necessary to sustain a claim of punitive damages. *See* N.D.C.C. § 32-03-07. Be this as it may, no reference to damage amounts or the like will be allowed.